UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHOAN FOODS, LLC,<br><br>                              Plaintiff,<br><br>vs.<br><br>ALLIED WORLD ASSURANCE<br>COMPANY (U.S.), Inc.,<br><br>                              Defendant. | Case No.  4:18-cv-00273-DCN<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by the parties in this case. Each motion involves discovery and comes on the heels of various informal discovery dispute conferences between the Court and counsel.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). The Court will address each motion in turn.

## II. ANALYSIS

### A.  Motion to Compel (Dkt. 42)

On October 17, 2019, Plaintiff Idahoan Foods, LLC ("Idahoan") filed a Motion to

Compel. Dkt. 42. Idahoan asserts that Defendant Allied World Assurance Company (U.S.),

Inc. ("Allied World") has redacted and/or improperly withheld reserve and reinsurance

information relative to the claims at issue in this case.

For context, some background information is appropriate.

In 2016, Idahoan had an ongoing contract with Idaho Supreme Potatoes ("ISP") to

process potatoes into flake and slices and to package products for delivery to Idahoan's

customers. On September 5, 2016, a fire at the ISP facility stopped all production. The ISP

facility was down for three months for repairs. Idahoan was unable to process

approximately 927,000 hundred-weight pounds of potatoes during those three months.

Idahoan closed out its fiscal year in August 2017, producing 16 million fewer pounds of

potato products compared to previous years and with significantly less in sales.

Idahoan notified its insurance broker immediately after the fire, who in turn notified

Allied World. Allied World contracted with McLarens Global Claims Services

("McLarens"), an independent adjustor, to review the claim. McLarens hired Hagen Strieff

Newton & Oshiro ("HSNO"), a forensic accounting firm, to assist in reviewing the claim.

After Idahoan closed out its fiscal year, it provided final numbers and documents

supporting the losses it had suffered as a result of the fire. The information provided

showed Idahoan had suffered business interruption and extra expenses covered by its

insurance policy. Allied World denied the majority of Idahoan's claim. Idahoan filed this

case in May 2018 to recover the remainder of its insured losses from Allied World.

During the course of discovery, Idahoan served multiple requests for production on

Allied World seeking information relative to reserves and reinsurance. Reserves[1] are set by an insurance company as an estimate of the amount it may ultimately have to pay on a specific claim. Reinsurance, on the other hand, is a form of insurance purchased by insurance companies to mitigate risk and spread the burden of indemnification across multiple insurance carriers.

Allied World refused to produce information related to either request, claiming it was confidential and proprietary. Idahoan then served subpoenas seeking similar information on HSNO and McLarens. HSNO provided written responses and objections to the subpoena; McLarens did not. In the end, Allied World provided redaction and privilege logs for itself, HSNO, and McLarens, and, while it withheld some documents altogether, it produced some in redacted form.

The question of whether reserves and reinsurance information is discoverable is muddy at best. While it is true that reserve information is usually not discoverable, in cases—as here—where a party has alleged bad faith, Courts throughout the nation have by a slim margin found that reserve information should be produced. *See generally, Penn-Dion Corp. v. Great Am. Ins. Co. of New York*, No. CV 17-4634, 2019 WL 3202503, at *5 (E.D. Pa. July 16, 2019) ("District courts within the Third Circuit are split on the question of whether insurance reserves are discoverable in bad faith cases."); *Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co*., No. 17-CV-3141 (JRT/LIB), 2019 WL 4897159, at *5 (D. Minn. Jan. 9, 2019) ("specific reserve information . . . is privileged and thus not

---

[1] Reserves are sometimes known as loss reserves or case reserves.

discoverable in this case."); *Hunter v. GEICO Gen. Ins. Co.*, No. CV 17-05070, 2018 WL 4352823, at *17 (E.D. La. Sept. 12, 2018) ("reserve information is discoverable where, as here, a claim of bad faith is asserted.").

The situation is no clearer in the Ninth Circuit. There is nothing from the Circuit itself, thus the Court must look within the Circuit to other district courts for guidance. In *Western Surety Co. v. United States*, the District of Arizona summarized the quandary this question places on courts by noting that, "while case law discussing the discoverability of reserve information exists, that case law is limited to the context of insurance bad faith and courts are not in agreement on the issue." No. CV-16-00761-TUC-CKJ, 2018 WL 6788665, at *2 (D. Ariz. Dec. 26, 2018).

The case before the Court today involves allegations of bad faith, therefore, it stands to reason the information is relevant. Even then, however, the Court is cognizant of the fact that "whether evidence of loss reserves is discoverable depends upon the issues *presented in a given case*." *Spahr v. Amco Ins. Co.*, No. CV 09-9174-PA (AGRX), 2010 WL 11459909, at *2 (C.D. Cal. Sept. 29, 2010) (internal citations and quotations omitted) (emphasis added).

Upon review of Idahoan's Complaint, the Court finds that the reserve information is necessary and discoverable in this specific case. The claims at issue are all for breach of contract and bad faith—i.e. claims specifically directed at whether the insurer (Allied World) reasonably denied payment. Having reserve information could help Idahoan—and the Court—understand why Allied World denied payment. To be sure, setting a reserve is not an admission of liability, nor does it affect the legal question of coverage, but the

information is nonetheless germane to these issues and should be turned over. *See RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 214CV01232APGGWF, 2017 WL 2292818, at *8 (D. Nev. May 25, 2017) ("Reserve information is relevant in an insurance bad faith lawsuit because the insurer has the contractual duty to defend and indemnify its insured, which also encompasses the duty to reasonably evaluate and settle claims within the policy's coverage."); *Miller v. York Risk Servs. Grp.*, No. CV-13-01419-PHX-JWS, 2014 WL 11515634, at *5 (D. Ariz. June 20, 2014) (finding that "federal District Courts have generally held that an insurance company's reserve information and aggregate claims information is relevant and discoverable in cases alleging bad faith."); *Paul Johnson Drywall, Inc. v. Phoenix Ins. Co.*, No. CIV. 13-8124-PCT-PGR, 2014 WL 1764126, at *3 (D. Ariz. May 5, 2014) (explaining that in insurance bad faith cases, policyholders often seek information pertaining to loss reserves to show "what [the insurer] actually knew and thought, and what motives animated its conduct, which are critical areas of inquiry in bad faith cases and fully fair game for discovery") (internal quotations and citations omitted); *Isilon Sys., Inc. v. Twin City Fire Ins. Co.*, No. C10-1392MJP, 2012 WL 503852, at *2–3 (W.D. Wash. Feb. 15, 2012) (noting that "because decisions related to reserves in this case were not 'made by persons without knowledge of the insured's actual policies,' but were instead specifically authorized on a case-by-case basis, reserve information is likely relevant."); *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, No. C 04-01827 MHP, 2009 WL 1457974, at *4 (N.D. Cal. May 26, 2009) (holding that because "reserves are set for claims that the insurer might be liable to pay, the reserves may indicate an estimate of the amount that defendant believed or knew it would have to pay for plaintiff's [] claims. This

MEMORANDUM DECISION AND ORDER - 5

information may be relevant to showing the difference between what defendant thought it would have to pay and its communications with plaintiff regarding its evaluation of the scope of the loss."); *Hoey-Lees v. USAA Cas. Ins. Co.*, No. C08-5231RJB, 2009 WL 10676511, at *2 (W.D. Wash. Jan. 7, 2009) (determining that "reserve information is relevant to bad faith disputes because such information would assist the plaintiff in evaluating the bad faith case and in preparing for trial.") (internal quotations and citations omitted); *Bernstein v. The Travelers Insurance Company*, 447 F. Supp. 2d 1100, 1116 (N.D. Cal. 2006) (finding reserve information relevant and requiring the party turn over the same subject to a protective order).[2]

Despite such caselaw, Allied World contends that even though bad faith claims are at issue in this case, reserve information is of marginal relevance. This objection is best left for a later time. "Relevance is rarely a proper grounds in a bad faith case for refusing to produce documents contained in the insurer's claims file." *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 668 (W.D. Wash. 2007); *accord, Hoey-Lees*, 2009 WL 10676511, at *2; *see also Paul Johnson Drywall, Inc.*, 2014 WL 1764126, at *3 (holding the objections raised "relate to the weight of the evidence and not its relevancy for purposes of discovery") (internal citations omitted). Relevancy may play a role later during trial, but for purposes of discovery, the Court finds that the information is necessary for Idahoan's claims and

---

[2] Also persuasive to the Court is the fact that Idahoan is not simply a third-party in this action, but the insured party itself. *See Bernstein*, 447 F. Supp. 2d at 1105 (discussing reserves in third party vs first party insurance cases and finding that ultimately it is the Court's duty "to determine whether disclosure is appropriate in the specific circumstances presented by the case at bar." Here, the Court finds that the parties in this case are directly, contractually linked and because the claims at issue are all related to bad faith, reserve information should be shared with the insured (Idahoan).

defenses.[3] *See* Fed. R. Civ. P. 26 (b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

The Court's finding above, however, does not extend to reinsurance information. Reinsurance information is a contractual agreement between insurance carriers. While the contracts themselves are discoverable, *see Heights at Issaquah Ridge Owners Ass'n v. Steadfast Ins. Co.*, No. C07-1045RSM, 2007 WL 4410260, at *4 (W.D. Wash. Dec. 13, 2007), the Court finds any discussions between Allied World and its reinsurance carrier regarding reinsurance amounts is too far removed from this case. *See Flintkote Co.*, 2009 WL 1457974, at *6 ("the reinsurance information is less relevant to determining the 'state of mind' or actual knowledge of the insurer."); *Heights*, 2007 WL 4410260, at *4 (denying discovery on reinsurance based on Plaintiff's failure to demonstrate relevance of reinsurance to the claims of bad faith). While the two topics are related, the Court finds that for purposes of bad faith and breach of contract, there is little reason to involve another party that had essentially an "arms-length" transaction with Allied World.

Accordingly, the Court will GRANT in PART and DENY in PART Idahoan's Motion to Compel. Reserve information must be turned over. The reinsurance policies themselves (including declaration sheets and policy limits) must be turned over, but

---

[3] Allied World also expresses concerns about confidentiality and about this information going to a jury. The Court understands Allied World's concerns; however, confidentiality should be a non-issue as there is a robust protective order in this case that would protect the inappropriate dissemination of this information. As for jury confusion, the Court can craft appropriate instructions should such become necessary.

communications between Allied World and its reinsurance carrier need not be turned over.[4] Allied World shall provide unredacted copies of HSNO and McLarens' discovery responses within seven (7) days of the date of this order.

### B. Motion for Extension of Time (Dkt. 43)

In this Motion, Allied World asked the Court to extend fact discovery approximately two weeks so that it could have adequate time to review a voluminous production of documents it received from Idahoan on the eve of the close of fact discovery.[5] Allied World requests this brief extension so they can have an opportunity to review Idahoan's responses and determine if Idahoan adequately complied with the discovery requests.

Idahoan did not oppose the request. Dkt. 45, at 3. While there have been discovery disputes that have arisen since this time—some of which arguably touch on topics and discovery produced on October 18, 2019, neither party has filed any further motions to alter or amend fact discovery as it relates to this round of production. Accordingly, the Court can only assume that Allied World reviewed Idahoan's documents and found them sufficient. This assumption, coupled with Idahoan's non-opposition, weighs in favor of GRANTING the Motion.

---

[4] Idahoan requests an award of attorney fees in connection with its Motion to Compel, arguing that under Federal Rule of Civil Procedure 37, the court must award fees if a motion to compel is granted unless there was a failure to meet and confer in good faith, the nondisclosure was substantially justified, or other circumstances make an award of expenses unjust. In this case, the Court finds that an award of attorney fees is not appropriate. This is not a settled area of law in the Ninth Circuit. Even though the Court ultimately disagreed with Allied World, its position was not without merit.

[5] Fact Discovery was set to close on October 18, 2019. Idahoan produced 10,000+ pages of documents after 5:00 p.m. on the 18th.

### C.  Motion to Amend/Correct (Dkt. 46)

Similar to the prior motion, Allied World filed this motion to ask the Court to enter an amended scheduling order to allow the parties additional time to sort out certain disagreements. Specifically, it appears that on or about August 30, 2019, Idahoan served its Responses to Allied World's Fifth Set of Request for Production of Documents. Allied World found the response lacking and sought additional time to sort through the matters and/or file a motion to compel. Idahoan opposed the motion. In its reply, however, counsel for Allied World represented that the parties had engaged in further conferencing and that Idahoan agreed to supplement its responses. At the time it filed its reply, Allied World noted this supplemental production had not yet occurred. Again, however, no follow up motions were filed in this matter so the Court can only assume Allied World found the supplementation sufficient.

Accordingly, the Court finds Allied World's Motion to Amend is MOOT.[6]

### D.  Motion to Strike Johnson Affidavit (Dkt. 47)

In support of its Motion to Compel (Dkt. 42) Idahoan relied on the affidavit of one of its purported experts, Stephen Johnson (Dkt. 42-2). Allied World argues that Johnson's opinions should be stricken since they do not meet the requisite standards under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. (1993) and Federal Rule of Evidence 702 ("Rule702") because Johnson (1) failed to establish an area of expertise, and (2) did not

---

[6] To a certain extent, the Court is granting the Motion by allowing the parties to go beyond the agreed scheduling order to complete discovery. That said, the Court finds that the request is ultimately moot as the parties were able to work the matter out themselves.

MEMORANDUM DECISION AND ORDER - 9

rely on scientific methods or procedures to support his opinions.

Under Rule 702, the court must satisfy itself that the proposed expert testimony is both reliable and relevant.

Idahoan counters that Rule 702 does not apply to discovery disputes—rather only during summary judgment or at trial—but that even if Rule 702 did apply, Johnson has set forth sufficient information to satisfy *Daubert* and Rule 702. Idahoan cites to a single district case—*Pinal Creek Grp. v. Newmont Mining Corp*., 352 F. Supp. 2d 1037, 1039 (D. Ariz. 2005)—which suggests a Rule 702 challenge during discovery is premature. Allied World disagrees, arguing that the Court can address the relevancy and reliability of an expert's opinion at any point during a case. More importantly, however, Allied World points out that it has not moved to wholesale exclude Johnson as an expert, but simply objects to *these* opinions in *this* specific affidavit.

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court takes no position on whether Rule 702 applies at this stage of the case or not. However, assuming Rule 702 and *Daubert* do apply, the Court still finds Johnson's affidavit is admissible at this time. While it is light on details, it sufficiently establishes his background and sets forth the methodology he used in coming to his conclusions. In analyzing the issues of insurance reserves and reinsurance, the Court relied on available

caselaw (limited as it was) and not necessarily on any singular affidavit or document submitted by Idahoan. To that end, the Court will not strike Johnson's affidavit, but will give it the weight it deems appropriate.

Allied World's Motion to Strike Johnson's Affidavit is DENIED.

### E.  Motion to Strike Damages (Dkt. 55)[7]

The parties first brought this issue to the Court's attention in an informal manner. After participating in the Courts' discovery dispute process—and an agreement having not been reached—the parties filed supplemental briefs on the issue.

In essence, this dispute is best styled as a motion by Allied World to strike certain damages claimed by Idahoan based upon Idahoan's failure to comply with Federal Rule of Civil Procedure 26.

Under Rule 26, as part of its initial disclosures, a party must provide:

> A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). In this case, Idahoan's initial disclosures outline[8] the following in regard to the damages it requests:

---

[7] This is technically not a stand-alone motion. The parties filed supplemental briefing on this issue after an informal discovery dispute conference with the Court. Thus, the moving papers are not styled as a motion on the docket but are "linked" to various other pending motions. While it was not brought as a formal motion, the Court will couch it as such—for organizational purposes—and because the Court is substantively ruling on the underlying issue.

[8] In the District of Idaho discovery documents—including initial disclosures—are not filed with the Court. The Court received a copy of Idahoan's initial disclosures as part of the informal discovery dispute process.

Idahoan Foods seeks the following damages for the claims asserted against the Defendant:

1. Damages for claims of : (1) breach of contract; (2) breach of contract – good faith and fair dealing; (3) bad faith breach of duty; and (4) negligent breach of duty in an amount to be determined at trial, however such amount shall not be less than the sum of $3,000,000.00.
2. All costs and expenses incurred in this action, including reasonable attorneys' fees.
   It is believed that Idahoan Foods's damages are supported by the following documents:

1. Documents submitted to Allied in support of Idahoan's claim and the documents identified above.
2. Allied's claim file.
3. The insurance policy or policies at issue.

Allied World did not object to Idahoan's initial disclosures on damages.

On October 25, 2019—before the close of fact discovery—Idahoan supplemented its initial disclosures in order to claim time spent by two individuals (Aaron Oberhansley and Aaron Bagley) analyzing the bad faith claims and reviewing information compiled by Allied World, HNSC, and McLarens. This time amounts to roughly $32,000 in additional damages.

On November 6, 2019—after the close of fact discovery—Idahoan disclosed one of its expert witnesses, Scott Kimber, of Lone Peak Valuation Group. Kimber analyzed Idahoan's claims, agreed that Allied World should have paid more on Idahoan's claims than it did, and identified an additional $1,380,333 for normal operating expenses due to Idahoan as a component of its business interruption and/or extra expense losses. Allied World objects to this amount, claiming it is a "new category" of damages not previously disclosed. Allied World also objects to the damages for Oberhansley and Bagley's work.

MEMORANDUM DECISION AND ORDER - 12

Allied World begins by arguing that Idahoan's Rule 26 initial disclosures were insufficient at the outset of this case and that any "supplementation" now is untimely. These are two separate issues but work in tandem.

First, the question of whether Idahoan's initial disclosures are sufficient is somewhat convoluted because Allied World believes Kimber's damages are "new," whereas Idahoan believes they are simply an extension of damages under a previously disclosed theory. The Court will address this quandary in greater detail below, but notes that, generally speaking, whether a party has sufficiently complied with Rule 26 is extremely case specific, and—like the above reserve/reinsurance issue—not well settled in the Ninth Circuit. *See, e.g., Dillon v. W. Pub. Corp.*, 409 F. App'x 152, 155 (9th Cir. 2011) (affirming lower court's ruling that allowed plaintiff to submit a new damage calculation for the second trial on damages even though it was not included in original Rule 26 disclosures); *compare Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 822 (9th Cir. 2019) (affirming lower court's ruling that Plaintiff could not put on evidence of damages in light of his failure to comply with Rule 26 even though such resulted in the dismissal of those claims); *but see Toyrrific, LLC v. Karapetian*, 606 F. App'x 365 (9th Cir. 2015) (affirming lower court's ruling that party failed to comply with rule 26, *but* reversing the court's subsequent finding that that information was, therefore, inadmissible, stating that, absent bad faith, a less drastic sanction was necessary). In short, this determination is discretionary and case specific.

The Court has reviewed Idahoan's initial disclosures and the cases cited by both parties. All things considered, the Court finds that while Idahoan could have been more

detailed in its initial disclosures,[9] what was provided is sufficient to comply with the purposes of Rule 26 which is to "accelerate the exchange of basic information . . . needed in most cases to prepare for trial or make an informed decision about settlement." *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).

This is not a situation where Idahoan wholly failed to disclose damages, but rather, what appears to be a misunderstanding or assumption about what exactly was included in those damage requests. Additionally, litigation evolves, and the Court would expect to see some changes in calculations and theories as the case progresses. As Magistrate Judge Ronald E. Bush aptly noted:

> [B]oth in the underlying nature of the type of claims and in the particular details of the alleged damages associated with such claims, it does not strike the Court as unusual that the description of such claims will evolve from the early date of initial disclosures through the completion of the usual sort of forensic claim assessment done by experts in such cases. In other words, any deviation in the amount of damages sought over time—particularly this far ahead of the trial date—is not necessarily an indication of a litigant's intent to deceive the other side through some sort of procedural sleight of hand.

*Diversified Metal Prod., Inc. v. Bechtel Nat'l, Inc*., No. 09-451-EJL-REB, 2011 WL 98540, at *4 (D. Idaho Jan. 6, 2011). *See also Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *1 (E.D.N.C. May 7, 2012) ("[A] party may supplement its Rule 26(a)(1)(A)(iii) 'computation' by producing an expert report (including documents) that complies with Rule 26(a)(1)(A)(iii).").

Second, as for Allied World's timing argument, the Court notes that most of the cases cited by Allied World for the proposition that the Court must strike a lately disclosed

---

[9] After all, there is arguably always a way to be "more detailed" or "more specific."

damages calculation are inapplicable as each disclosure in such cases occurred much later than the circumstances present here. *See, e.g., Jacked Up, LLC v. Sara Lee Corp.*, No. 3:11-CV-3296-L, 2019 WL 1098992 (N.D. Tex. Mar. 8, 2019) (striking damages that were identified three years after summary judgment and more than four years after the close of discovery); *Brandt Industries, Ltd. v. Pitonyak Machinery Corp.*, No. 1:10-cv-0857-TWP-DML, 2012 WL 4027241, *2 (S.D. Ind. Sept. 12, 2012) (striking damage calculation disclosed three weeks before trial); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3155574, *4-5 (N.D. Cal. Aug. 2, 2012) (striking new damages theory and documents because they were first revealed in rebuttal expert reports).

Again, even assuming arguendo the Court found Idahoan's disclosure late, expert discovery had only just begun when Idahoan produced Kimber's report. Allied World had an opportunity to respond accordingly. Moreover, were the Court to determine Allied World had suffered some prejudice, because fact discovery had [at that time] only recently closed, the remedy would be to either extend discovery or simply preclude Idahoan from presenting non-disclosed evidence at trial, not strike the damages claim outright.

Relatedly, Allied World also claims that the underlying information Kimber used was never disclosed. This is a slightly different argument than the above, but ultimately comes out the same. Idahoan explains that all the information Kimber relied on was turned over during either fact or expert discovery. Should Allied World disagree, they have two options: first, they could move to reopen discovery solely for the purpose of deposing Kimber, or (2) they can argue the information is inadmissible at trial. *See Warnecke v. Nitrocision, LLC*, No. 4:10-CV-00334-CWD, 2012 WL 5987429, at *18 (D. Idaho Nov.

29, 2012) ("However, the parties should remain aware that they will not be allowed to present evidence—concerning damages or otherwise—that was not provided in accordance with Rule 26(a)."); *Accord, Cmty. House, Inc. v. City of Boise, Idaho*, No. 1:05-CV-00283-CWD, 2012 WL 1205810, at *2 (D. Idaho Apr. 11, 2012). *But see R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (We recognize that, in the ordinary case, violations of Rule 26 may warrant evidence preclusion. Yet evidence preclusion is, or at least can be, a "harsh[ ]" sanction. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001). The Court is not in a position at this time to ultimately rule on whether certain information relied on by Kimber is admissible and defers such a finding until trial.

Lastly, the Court must address the idea that this claim for damages is "new."[10] Allied World maintains that it had no idea Idahoan would be seeking "lost profits" or "continuing operating expenses." Dkt. 56, at 3. In its estimation, Idahoan "was only making a claim for the loss of opportunity to purchase raw potatoes and the inability to purchase natural gas." Dkt. 56, at 4. In support of this conclusion, Allied World points—among other things—to Idahoan's response to Allied World's First Set of Request for Admissions wherein Idahoan stated:

> **As previously explained to Defendant and its representatives, Plaintiff's claim is based in part on the inability to purchase raw material, and the inability to purchase additional volumes of natural gas, at reduced, favorable, open market prices**, <u>thus decreasing the cost of goods sold and</u>

---

[10] This analysis might have been better at the outset of this motion rather than the conclusion, however, the Court felt that the procedural and rule-based arguments were more relevant than the specific facts of this case. While these specific facts add a unique element to this particular situation, the Court stands by its analysis in light of all relevant caselaw.

<u>being able to sell product on the open market at a higher margin</u>, all due to plant downtime resulting from the SEPTEMBER 5, 2016 INCIDENT. <u>Plaintiff's damages also include extra expense incurred to make sure that a customer did not cancel an order/contract.</u>

Dkt. 56, at 4 (citing Dkt. 56-1, at 4-5) (bolding in original). To be sure, Idahoan acknowledges the losses it has claimed since the beginning include raw materials and natural gas, but notes its damages are not limited to those topics.

Pointing to the same response above, Idahoan counters that it is clear it has sought more general losses from the outset of this case and that Allied World has been on notice of the same. *See* underlining above. Thus, to some degree this is a disagreement of semantics: Allied World feels that anything akin to "lost profits" is new, while Idahoan feels that "lost profits" are subsumed in its "business interruption" damages and/or its "other losses."

While the Court may not agree with how either party titles these specific damages, it does appear that Allied World has generally been aware of these claims—even if it labeled them differently. Idahoan has used terms such as "lost margin," "net profit decrease," and "decreased profit" in documents to Allied World since as early as November 2018. By all accounts these sorts of damages should not have been a surprise to Allied World.

One thing seems clear: the parties may have been interpreting Idahoan's damage amounts differently—exclusive or inclusive of other damages—based upon their individual understandings of certain phrases/categories. That said, the underlying substance of these damages—i.e. what the monetary amount strives to reflect—is not so

far removed from any other category that Allied World should have been shocked or caught off guard now that they have been explicitly brought forward. They are the type of damages one would expect to see in a case such as this. Similarly, however, Idahoan should—if at nothing more than a grammatical level—be able to see where Allied World is coming from and recognize that it could have been a little more specific in its vernacular. Although, again, while any dollar amounts could have changed during the course of litigation, Idahoan could have delineated in some manner the various categories and sub-categories of damages to ensure that all parties were on the same page.

Here, it seems the parties have been like ships passing in the night: Idahoan thinking these types of damages were naturally included in the calculations and fair game; Allied World thinking these types of damages are distinct from other categories and, absent being explicitly listed, not at issue. Either way, the Court finds that the *nature* of the damages here (however labeled) are not new. The Court will not strike the damages outlined by Kimber in his expert report.

As the Court noted above—and because it does not know what, if anything, transpired relative to these issues during the remainder of expert discovery—Allied World has essentially two options at this point. It can move to reopen discovery on the limited issue of "lost profit" damages, or it can move forward and seek to curb Idahoan's evidence at trial.

Relatedly, while it is true that Allied World represented that it would take the deposition of Oberhansley and/or Bagley to remedy its concerns about the calculations submitted by these individuals, it did so during the Court's informal mediation process. As

MEMORANDUM DECISION AND ORDER - 18

the name suggests, those discussions were informal and non-binding on the parties. It is Allied World's prerogative to alter or amend its position. Idahoan had offered to produce additional documents on the costs at issue and Oberhansley himself for a deposition should Allied World so desire.[11]

In principle, however, the Court disagrees with Allied World that Oberhansley and Bagley's time is a "new claim component." These individuals' research and analysis costs are subsumed in Idahoan's damages request for "all costs and expenses incurred in this action." That said, these types of costs would, ordinarily, not be considered "damages" within the underlying case, but rather costs of litigation. While they may be recoverable, the Court finds the amount should be determined at a later date—such as via a motion for fees and costs—after a trier of fact has ruled on the underlying issues.

But again, from a practical standpoint, if Allied World feels that it has been prejudiced by the disclosure of this information, the remedy is not to strike the "claims," but simply to allow Allied World a fair opportunity to conduct the discovery it deems necessary.

### III. CONCLUSION

Each of the motions in this case represent issues regarding the scope and timing of discovery. The Court has reviewed the record, the parties' position papers, their moving papers, and supplements, and finds that much of this could have been avoided by extending certain courtesies to the other side.

---

[11] Again, however, as substantial time has elapsed since the filing of these motions, the Court does not know if any of the aforementioned actions took place.

In summary, the Court finds that reserve information is relevant to the claims at issue and must be turned over in unredacted form; the reinsurance policies themselves are likewise discoverable, but not any communications between Allied World and its reinsurance carrier.

Idahoan's Rule 26 disclosures were adequate, and the damages claim was neither belated nor new. Accordingly, it will not be stricken.

The prior deadlines in this case have been moved—or have been retroactively moved—to allow for the completion of fact discovery.

The only remaining issue is whether the Court's decision today materially affects the posture of the case and whether Allied World will need more time to complete fact or expert discovery. If Allied World so desires, it should meet and confer with Idahoan on these issues and then submit a report to the Court outlining precisely what narrow issues remain as a result of the Court's order. Idahoan will have an opportunity to weigh in on whether additional discovery is appropriate, and the Court will then make its decision. Any such motion to reopen discovery must be filed within 14 days of the date of this order.

## IV. ORDER

**IT IS HEREBY ORDERED:**

1. Idahoan's Motion to Compel (Dkt. 42) is GRANTED in PART and DENIED in PART as outlined above.

2. Allied World's Motion for Extension (Dkt. 43) is GRANTED.

3. Allied World's Motion to Amend/Correct (Dkt. 46) is deemed MOOT.

4. Allied World's Motion to Strike Johnson Affidavit (Dkt. 47) is DENIED.

5.  Allied World's Motion to Strike Damages is DENIED.

DATED: April 22, 2020

_____
David C. Nye
Chief U.S. District Court Judge